UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE PUMPHREY,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>COLTON HARVEY, et al.,<br><br>　　　Defendants. | Case No. 20-cv-08474-JSC<br><br>**SCREENING ORDER PURSUANT TO 28 U.S.C. § 1915**<br><br>Re: Dkt. No. 1 |

　　This matter involves civil rights claims arising from Tyrone Pumphrey's encounters with police officers employed by the City of Pittsburg in Contra Costa County, California, as well as Contra Costa County Sheriff's Deputies.  Mr. Pumphrey, proceeding in forma pauperis, filed the instant complaint against City of Pittsburg Officers Colton Harvey, Dillon Tindall, Jesus Arellano, Thompson, Goldman, Oreja, Seaborn, as well as Contra Costa County and Contra Costa Sheriff's Deputies Does 1-25 (collectively, "Defendants").  (Dkt. No. 1 at 2-3 ¶¶ 1-11.)  The Court previously granted Mr. Pumphrey's application to proceed in forma pauperis.  (Dkt. No. 6.)  The Court must now review the complaint's allegations under 28 U.S.C. § 1915.  Because Mr. Pumphrey's complaint adequately states claims on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2), the complaint is ordered served upon Defendants.

**COMPLAINT ALLEGATIONS**

　　On June 8, 2019, Mr. Pumphrey arrived at his girlfriend's home in Pittsburg, California.  Upon arriving, he waited outside in his parked car and called her, notifying her of his arrival.  At that time a Pittsburg police car pulled up behind him after making a police stop with another car 20 to 30 feet behind him.  (Dkt. No. 1 at 4 ¶ 15.)  After pulling up behind Mr. Pumphrey's car, Officers Harvey and Tindall then emerged from the police car, approached Mr. Pumphrey's parked car, and asked for his license and registration.  Mr. Pumphrey replied that he was calling

his girlfriend, requesting that she let him through the gate to her home, and that this was the reason he was sitting outside her home in his parked car.

Mr. Pumphrey then asked Officers Harvey and Tindall their reason for approaching him, and they replied it was because Mr. Pumphrey was on his phone. Mr. Pumphrey attempted to call his girlfriend again, and Officer Harvey "snatched [Mr. Pumphrey's] phone and threw it in the grass." (*Id.* at 4 ¶ 19.) Officer Harvey then asked Mr. Pumphrey if he was on probation or parole; Mr. Pumphrey replied that he was on probation for a DUI. Officers Harvey and Tindall then asked Mr. Pumphrey to exit his vehicle, and Mr. Pumphrey did so.

Outside, the officers instructed Mr. Pumphrey to sit on the street curb and began asking him questions about his probation. Officer Harvey then began to search Mr. Pumphrey's car without Mr. Pumphrey's consent. After completing his search, Officer Harvey informed Mr. Pumphrey that the car would be towed because Mr. Pumphrey did not have a license and was on probation. As Mr. Pumphrey reminded the officers that his car was parked and turned off when the officers approached and began their questioning, they "decided to put him in the back of [their] police car and said that he was going to jail." (*Id.* at ¶ 25.) The officers then handcuffed Mr. Pumphrey, placed him in the back of the police car, and called for backup. Mr. Pumphrey stated multiple times that the handcuffs were too tight, but the officers never loosened or adjusted them.

Defendant Officers Arellano, Thompson, Goldman, Oreja, and Seaborn arrived and—with the assistance of Officers Harvey and Tindall—"snatched [Mr. Pumphrey] back out of the police car" and began to strike his body with their hands and knees. (*Id.* at ¶ 27.) At least one officer placed his knee on the back of Mr. Pumphrey's neck. The officers then placed Mr. Pumphrey in a "bodywrap device" that "severely inhibited" Mr. Pumphrey's ability to breathe, and lifted him from the ground and "slammed him into the back" of the police car. (*Id.* at ¶¶ 28-29.)

Mr. Pumphrey was then taken to the Martinez Jail, and was placed in a holding cell where he was to use a telephone in an attempt to make bail. At this time a dispute arose between Mr. Pumphrey and another inmate regarding use of the telephone inside the holding cell—however, Mr. Pumphrey and the inmate separated once sheriffs arrived to intervene. Despite the dispute's end, sheriffs entered the cell and—while they did not accost the other inmate—they "instantly

attacked" Mr. Pumphrey, "slamming him to the ground as well as punching and kicking him in the ribs after they already had his hands subdued behind his back." (*Id.* at ¶¶ 33-34.) The sheriffs then "dragged [Mr. Pumphrey] out to the medical table" where they slammed his head on a counter until a nurse screened him for any wounds. (*Id.* at ¶ 35.) After this screening, the sheriffs returned Mr. Pumphrey to a cell by himself where they "pinned him to the ground," using their body weight to remove his handcuffs. (*Id.* at ¶ 36.) After their exit, Mr. Pumphrey passed out from their assault and, once he regained consciousness, he realized his rib cage was badly injured. Mr. Pumphrey pleaded for medication to alleviate his pain. No nurse or sheriff ever responded.

Eventually, sheriffs allowed Mr. Pumphrey to exit and make a phone call to post bail. He posted bail, and family members later arrived who "picked [him] up . . . [and] drove him straight to Highland Hospital." (*Id.* at ¶ 40.) There, Mr. Pumphrey was kept overnight, and an evaluation revealed he had several broken ribs. He was released the following day with several prescribed medications, and then made a complaint at Martinez Internal Affairs regarding the sheriff deputies who broke his ribs.

**LEGAL STANDARD**

A court must dismiss an in forma pauperis ("IFP") complaint before service of process if it is frivolous, fails to state a claim, or contains a complete defense to the action on its face. 28 U.S.C. § 1915(e)(2). Section 1915(e)(2) parallels the language of Federal Rules of Civil Procedure 12(b)(6) regarding dismissals for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000). The complaint therefore must allege facts that plausibly establish each defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). To avoid dismissal, a complaint must contain more than "naked assertion[s]," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**DISCUSSION**

Mr. Pumphrey brings 4 claims pursuant to 42 U.S.C. § 1983. Mr. Pumphrey alleges that Officers Harvey and Tindall used unreasonable and excessive force in violation of the Fourth Amendment by placing his hands in the tight-fitting handcuffs, and that all named Defendant officers used unreasonable and excessive force by striking his body with their hands and knees and placing him in the restrictive bodywrap. (Dkt. No. 1 at ¶¶ 44-46.) Mr. Pumphrey further alleges that Officers Harvey and Tindall violated his Fourth Amendment rights when they detained him in an unreasonable manner by handcuffing him, and that other named officers likewise unlawfully detained him by constraining him in the bodywrap and then placing him in the back of the police car. (*Id.* at ¶¶ 52-55.) The complaint contains allegations that Officer Harvey violated Mr. Pumphrey's Fourteenth Amendment rights by falsifying a police report in which he stated that "[Mr. Pumphrey] drove by [Officer Harvey] and [Officer] Tindall while on a cell phone," and that other Defendants violated Mr. Pumphrey's Fourteenth Amendment rights by slamming him to the ground at the Martinez Jail, "punching and kicking [him] in the ribs after his hands were already subdued behind his back[.]" (*Id.* at ¶¶ 64, 68.) Mr. Pumphrey alleges that at all times Defendants acted under the color of law. (*Id.* at ¶¶ 11, 44-46, 52, 59, 68.) These allegations are more than "naked assertion[s]," *Iqbal*, 556 U.S. at 678, and liberally construed the complaint states cognizable claims under 42 U.S.C. § 1983 on which relief may be granted, *see West*, 487 U.S. at 48.

**CONCLUSION**

1. The Clerk shall issue a summons and Magistrate Judge jurisdiction consent form and the United States Marshal shall serve, without prepayment of fees, the summons, Magistrate Judge jurisdiction consent form, a copy of the complaint with attachments, and a copy of this order on **Officers Harvey, Tindall, Arellano, Thompson, Goldman, Oreja, and**

4

**Seaborn**, as well as **Contra Costa County.**

2. The Clerk shall also mail a courtesy copy of the Magistrate Judge jurisdiction consent form, the complaint with all attachments and a copy of this order to the City of Pittsburg.

3. Defendants shall complete and file the Magistrate Judge jurisdiction consent form within the deadline provided on the form. They shall also file an answer in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: December 18, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge