1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TYRONE PUMPHREY,                    Case No.  20-cv-08474-JSC

8                 Plaintiff,

9          v.                           **ORDER RE: DEFENDANT'S MOTION
                                        FOR SUMMARY JUDGMENT**
10   CONTRA COSTA COUNTY,                Re: Dkt. No. 62

11                Defendant.

12

13        This civil rights case arises from Plaintiff's arrest and detention at Martinez Jail on June 8,

14   2019.[1]  (Dkt. No. 1.)[2]  The only remaining named Defendant, Contra Costa County, moves for

15   summary judgment.  (Dkt. No. 62.)  After the deadline to respond had passed, Plaintiff filed a

16   statement of non-opposition.[3]  (Dkt. No. 65.)  After carefully considering the briefing, the Court

17   concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the

18   March 3, 2022 hearing, and GRANTS the motion.

19                              **COMPLAINT ALLEGATIONS**

20        On June 8, 2019, Plaintiff was sitting in his parked car outside his girlfriend's apartment in

21   Pittsburg, California.  While he was calling his girlfriend from inside his car, Pittsburg police

22   officers Colton Harvey and Dillon Tindall parked behind him, approached, and asked for

23   Plaintiff's registration and insurance.  The officers "snatched his phone and threw it in the grass."

24   _____

25   [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (Dkt. Nos. 9, 21, 38.)

26   [2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

27   [3] The Court GRANTS Plaintiff's *ex parte* application to file a late statement of non-opposition.
     (Dkt. No. 66); *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395

28   (1993).

United States District Court
Northern District of California

(Dkt. No. 1 ¶ 19.)  They asked Plaintiff if he was on probation or parole, and Plaintiff replied that he was on probation for a DUI.  The officers ordered Plaintiff to get out of his car, which he did.  Plaintiff's girlfriend's daughter was walking nearby and asked Plaintiff if he wanted her to get her mother; Plaintiff said yes.  The officers told Plaintiff to sit on the curb and started asking Plaintiff about his probation.  They searched Plaintiff's car without consent and then informed him that they were towing his car because he didn't have a license and was on probation.  Plaintiff pleaded with the officers not to tow his car.  The officers then decided to handcuff Plaintiff and put him in the back of the police car.  Plaintiff told the officers several times that the handcuffs were too tight, but they did not adjust them.  Additional Pittsburg officers Jesus Arellano, Thompson, Goldman, Oreja, and Seaborn arrived.  The group "snatched the Plaintiff back out of the police car and began to issue various strikes with their hands and knees to the Plaintiff's body." (*Id.* ¶ 27.) "[A]t least one Defendant officer placed his knee on the back of the Plaintiff's neck with extreme force, while his hands were cuffed behind his back.  The Defendant officers then placed the Plaintiff in a bodywrap device, which severely inhibited his ability to breathe," then "picked the Plaintiff up from the ground and slammed him in the back of the same police car." (*Id.* ¶¶ 28–29.)

The Pittsburg officers took Plaintiff to Martinez Jail in Contra Costa County.  Plaintiff was booked and taken to a holding cell to use the phone to arrange bail.  Inside the holding cell, Plaintiff got into a brief physical altercation with another person regarding the phone.  After the altercation had ended, several County deputies came into the cell and attacked Plaintiff, "slamming him to the ground as well as punching and kicking him in the ribs after they already had his hands subdued behind his back." (*Id.* ¶ 33.)  The deputies handcuffed Plaintiff, brought him out of the cell to sit down at a medical intake table, and then "slammed his head on the counter." (*Id.* ¶ 35.)  Later, the deputies dragged Plaintiff to a cell by himself and pinned him to the ground with their body weight.  After they left, Plaintiff passed out.  When he regained consciousness, he realized he was badly injured on both sides of his rib cage.  He repeatedly requested medical care but the deputies ignored him.  After the deputies changed shifts, Plaintiff was allowed to make a phone call to post bail.  Family members drove Plaintiff directly to the hospital, where doctors determined he had several broken ribs.

Plaintiff brought claims for excessive force in violation of his Fourth and Fourteenth Amendment rights, for unlawful detention in violation of his Fourth Amendment rights, and for deliberate fabrication of evidence in violation of his Fourteenth Amendment rights.  (*Id.* ¶¶ 43–72.)  The complaint listed as defendants 7 named Pittsburg officers, 25 Doe officers of Pittsburg, Contra Costa County, and 25 Doe deputies of the County.  (*Id.* ¶¶ 2–10.)  Plaintiff settled with the Pittsburg officers in September 2021, (Dkt. No. 47), such that the only remaining named defendant is Contra Costa County.  The only relevant claim is the Fourteenth Amendment claim for excessive force, which is brought against "Contra Costa County DOE Deputies 1–25", (Dkt. No. 1 ¶¶ 67–72); the allegations supporting the other claims are limited to conduct of the dismissed Pittsburg officers, (*id.* ¶¶ 43–66).  The excessive force claim alleges that "Defendants . . . used unreasonable and excessive force amounting to extrajudicial punishment" despite Plaintiff being unarmed, and that the force was "intended to cause injury to Plaintiff" without legitimate penological goal.  (*Id.* ¶¶ 68, 71.)

After the deadline to move to amend had passed, Plaintiff filed a motion for leave to file an amended complaint naming the Doe deputies of the County.  (Dkt. No. 50.)  The Court denied the motion, (Dkt. No. 55), and Plaintiff then filed a separate case against the named deputies.[4]

## DISCUSSION

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.

At the outset, there is a mismatch between the factual allegations supporting Plaintiff's excessive force claim and the defendant named in the complaint.  The complaint alleges that "Contra Costa County DOE Deputies 1–25" "used unreasonable and extrajudicial force," (Dkt. No. 1 ¶ 68), but names only the County itself.  "A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under §

---

[4] *Pumphrey v. Battles*, No. 21-cv-09005-JSC.

United States District Court
Northern District of California

1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.C.*, 436 U.S. 658, 691 (1978); *see Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 406–07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably."). "[M]unicipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (cleaned up).

> The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality.

*Id.* (citations omitted). There are no specific allegations in Plaintiff's complaint supporting an inference that the County has a written or unwritten policy giving rise to the alleged excessive force; that the County has failed to train employees to avoid certain constitutional violations; or that the single instance of alleged excessive force indicates deliberate indifference on the part of the County. *See id.* at 1153–55.

Even if Plaintiff's complaint could be read to assert a *Monell* claim against the County, there is insufficient evidence in the record to create a genuine dispute of fact as to whether the County had a policy, failed to train, or was deliberately indifferent as inferred from the single alleged constitutional violation. Plaintiff does assert in his responses to special interrogatories and requests for admission that a custom or policy was the moving force behind the alleged constitutional violation, (Dkt. No. 62-6 at 3:19–4:5, 6:2-15; Dkt. No. 62-7 at 4:2-5), but these assertions are insufficient to create a genuine dispute of fact. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) (affirming summary judgment for municipality where plaintiff's evidence on failure to train was limited to one officer); *Kassab v. San Diego Police Dep't*, Nos. 07CV1071-MMA (WMc), 07CV1299-MMA (Wmc), 2009 WL 10668683, at *7 (S.D. Cal. Sept. 22, 2009), *aff'd in relevant part*, 453 F. App'x 747, 748 (9th Cir. 2011) (granting summary judgment to municipality where plaintiff failed to point to any policy or custom).

Plaintiff's statement of non-opposition is further indication that there is no genuine dispute of fact relevant to the County's liability.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim for excessive force.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.

This Order disposes of Docket Nos. 62, 66.

**IT IS SO ORDERED.**

Dated: March 2, 2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California